## WILMINGTON STEAMBOAT CO. v. STURGESS, Collector of Internal Revenue.

District Court, D. New Jersey.
July 30, 1931.

C. Russell Phillips, of Philadelphia, Pa., Willard F. Lippincott and William D. Lippincott, both of Camden, N. J., and Robert T. McCracken, of Philadelphia, Pa., for plaintiff.

Phillip Forman, U. S. Atty., of Trenton, N. J., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and R. P. Hertzog, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for defendant.

AVIS, District Judge.

This suit is an action at law, brought by plaintiff against defendant, tried by the court without a jury by consent of counsel, and is based generally on the following statement of facts:

The Wilmington Steamboat Company (hereinafter called the plaintiff) on May 1, 1916, purchased all of the capital stock of five other corporations for the agreed sum of $261,655.63. Among the corporations whose stock was so purchased was the Merchants' Transportation Company (hereinafter called the company). Prior to this purchase, the stock of the company was owned jointly by Horace Wilson and his son Joseph S. Wilson in equal shares. Although not of special interest in this cause, it also appeared that the same persons owned the stock of all of the companies sold to plaintiff for the consideration of $261,655.63, in equal shares.

The company, at the time of the sale and purchase of the stock, was capitalized in the amount of $25,000, and its only asset was a steamer, which cost $25,000, and which had been acquired on or about November 1, 1915.

The consideration was paid to the stockholders of the companies by the plaintiff giving a promissory note for $111,655.63 (which note, according to the testimony, was later paid), and issuing to them 1,500 shares of the capital stock of the plaintiff, at its par value of $100 per share. The plaintiff claims that the stock was actually worth considerably more than par, but on their books the suit is based upon consideration of the stock at its par value.

After the transaction was completed, the plaintiff set up the account on its books, allocating to the company the sum of $25,000, and to the other companies purchased the par value of its respective capital stock, and the balance of the total purchase price, amounting to $189,655.63, was generally charged to intangible assets.

Later, because of claimed instructions from the Interstate Commerce Commission, the total of the intangible assets was allocated to each of the companies purchased in proportion to its respective capital stock at par, and the total amount allocated to the company was $90,852.65.

Some claim is made in the pleadings and briefs that, for the purpose of calculating income and excess profits tax, the cost to the plaintiff should be substantially increased over the above amount. Whatever this court may finally decide is the proper amount, I am convinced, under the doctrine of the case of Remington Rand, Inc., v. Commissioner of Internal Revenue (C. C. A. 2) 33 F.(2d) 77, that the plaintiff's investment cannot exceed $90,852.65.

Two questions are presented; one of law and one of fact.

■ The government claims that, because of the fact that the plaintiff and company were affiliated during the year 1919, and filed consolidated tax returns, the transaction was intercompany, and that thereupon the plaintiff could not lawfully deduct the loss claimed to have been sustained by liquidation of the company.

Counsel for the government cites numerous decisions by the Commissioner and Board of Tax Appeals to sustain this contention.

I am unable, from reading the opinions in these cases, to follow the government's argument, which is that, although the entire assets of the company were liquidated early in the year 1919, the fact that there was not an actual dissolution of the company until December of that year, and that a consolidated return was filed by the plaintiff and its affiliated companies, including the Merchants' Transportation Company, bars the plaintiff from allowance for any loss sustained while so affiliated. It appears to be admitted by the government, following the decision in the case of Remington Rand, Inc., v. Commissioner of Internal Revenue (C. C. A.) 33 F. (2d) 77, supra, that, if there had been a complete separation at the time of liquidation of the assets of the company, and a separate return filed by the plaintiff for the balance of the year, the claim for allowance might be justified.

The case of Remington Rand, Inc., v. Commissioner, supra, which stands as the law at the present time, in effect reverses the decisions of the Board of Tax Appeals, where it appears that affiliation ceases at the time of the sale by the parent company of the stock of a subsidiary, and the profit, or loss, under these circumstances should be considered in calculating income and excess profits taxes.

After stating the facts, Judge Swan, writing the opinion of that court, said: "Whatever may be the rule where affiliation continues after the sale, under the facts of the instant case we think the board erred in ruling that neither taxable gain nor deductible loss resulted to the parent company from the sale of the stock." Page 78 of 33 F.(2d).

The fact that the affiliation continued in the instant case, after the liquidation of all of the assets of the subsidiary company, does not, in my opinion, prevent the corporation from claiming and being allowed a loss, if it sustained any, in the consolidated return for the year 1919. See United Publishers' Corp. v. Anderson (D. C. S. D. N. Y.) 42 F.(2d) 781.

■ The question of fact submitted is whether the plaintiff actually sustained any loss upon the liquidation of the Merchants' Transportation Company. The admitted fact that the stock of the company was owned by Horace Wilson and Joseph S. Wilson, and was sold to the Wilmington Steamboat Company, a corporation controlled at least by these two persons (p. 15) requires the court to scrutinize the testimony very carefully, in order to arrive at a just conclusion. At the time of the organization of the Merchants' Transportation Company in the year 1915, its only asset was the steamer Merchant which cost $25,000. In the purchase of the above company and four other companies, no attempt was made by the sellers or purchasers to place a value upon the stock or the assets of the company. The allocation of $90,852.65, as the amount paid for the stock of the company, was made by one McAllister, who had charge of the accounts of the Wilmington Steamboat Company, who testified that, after the purchase and after the original allocation had been made on the basis of the amount of capital stock outstanding, leaving $189,655.63 in intangibles, and on some suggestion from the Interstate Commerce Commission, whose direction or authority does not clearly appear, he con-

sulted with other accountants' and his superiors, and finally charged the intangibles proportionately with the capital stock among all of the companies so purchased.

He finally testified: "Mr. Marter was my immediate superior, and Captain Wilson was the president of the concern. However, I believe I had gotten up a tentative plan and submitted it to other accountants before it was taken up. I was dealing with the accounts and you had to do something with them. You come up to the point where you have this certain transaction and you have to in some manner take care of it." (Rec. pp. 87, 88.)

The only other testimony of any consequence, as to cost of stock of the company, is given by Mr. Horace Wilson, as follows:

"Q. Can you tell his Honor whether or not, in your judgment, the allocation at least in so far as the Merchants Transportation Company was concerned, was a fair allocation as between it and the other companies? * * * A. It was a very fair proportion." (Rec. p. 22.)

"Q. Let me put it this way. You said that about $90,000 plus out of the $261,000 face value of consideration received was allocated to the Merchants Transportation Company, and that you thought that was a fair allocation. Without referring to the other companies, will you tell us why you thought that the stock of the Merchants Transportation was worth $90,000 in 1916? A. My principal reason for it is on account of its relativity to the other assets bought in this lump sum." (Rec. pp. 23, 24.)

"Q. Will you give us an idea of what the steamboat 'Merchant' was worth in 1917, on a fair sale value? A. I should say between $60,000 and $75,000." (Rec. p. 26.)

"Q. What did you receive for the stock of the Merchants Transportation Company when you sold it to the Wilmington Steamboat Company, if you know? A. Well, it would be pretty hard for me to say what we received for it, but we sold it together with the stock of the several other companies which have been previously referred to by me in my answers, and my opinion is that the amount that was set up on the books of the Wilmington Steamboat Company was a fair proportion of what we received from it." (Rec. p. 34.)

On page 39 Mr. Wilson testified that it was approximately two years after the World War broke out before the smaller boats began to increase in value, and it appears that the purchase was at least two months prior to the expiration of two years. On page 44, in response to a question of the court as to whether the amount paid was in excess of actual value, the witness replied, "I do not think it was, no." On page 64 Mr. Wilson, upon being interrogated as to the reasons why his individual income tax return for 1916 did not reflect the profit made on this sale to the plaintiff, testified he did not consider it was a profitable transaction until the boat was sold by the Wilmington Steamboat Company, and that they were advised by their attorney that, under the law, they were taking no profit on account of it being a consolidation.

The steamer Merchant was bought by the company about November 1, 1915, for $25,000, and was its only asset when its entire capital stock was sold to plaintiff about June 1, 1916. The plaintiff, probably desiring to control all shipping of the character described in its neighborhood, was probably willing, and had a right, if it saw fit, to pay in cash and stock what it pleased, to consolidate all of these companies; but, sitting to decide a question of fact, the evidence produced is not sufficient to satisfy the court that the amount claimed by the plaintiff to have been paid was actually paid for the stock of the Merchants' Transportation Company, nor is there sufficient evidence to show that the stock of the company was at that time worth the amount claimed to have been paid therefor. The court is not satisfied that the plaintiff sustained any loss for which it is entitled to credit in its income tax returns.

The verdict will therefore be in favor of the defendant, and judgment will be entered accordingly.