## AMERICAN PRINTING CO. v. UNITED STATES.

### No. 3524.

District Court, D. Massachusetts.

Oct. 22, 1931.

Charles W. Mulcahy, of Boston, Mass., for plaintiff.

Frederick H. Tarr, U. S. Atty., and J. Duke Smith, Sp. Asst. U. S. Atty., both of Boston, Mass.

BREWSTER, District Judge.

This is an action against the United States, brought to recover income and excess profits taxes alleged to have been erroneously assessed and collected from the petitioner for the taxable year 1919. The case is submitted on an agreed statement of facts, supplemented by copies of records introduced in evidence. The only controversy now between the parties relates to the basis upon which an allowance for depreciation shall be computed. Briefly stated, the material facts are as follows:

Prior to 1917 the petitioner had acquired and during that year it was the owner and holder of record of all except four qualifying shares of the capital stock of the Fall River Iron Works Company (hereinafter referred to as the "Iron Works"), a Massachusetts corporation. On December 31, 1917, the Iron Works transferred in liquidation to the petitioner all of its assets consisting of real estate, machinery, and equipment, in consideration of the surrender by the petitioner of the stock in the Iron Works and the assumption of all outstanding liabilities. The transfer was authorized by the stockholders of the Iron Works at a meeting held November 28, 1917, at which meeting the officers were empowered to take all necessary steps for winding up the business of the corporation as of December 31, 1917. On that date the Iron Works ceased to do business, and soon thereafter the corporation was dissolved by decree of court.

Subsequent to December 31, 1917, the petitioner carried on the business of manufacturing cotton cloth, which was the business in which the Iron Works had been engaged, the petitioner amending its charter for that purpose.

The depreciable assets acquired by the petitioner from the Iron Works, as above set forth, were used by the petitioner in its business during the entire year of 1919, and the fair market value thereof on December 31, 1917, was greater than the original cost thereof to the Iron Works, and greater than the fair market value of said assets as of March 1, 1913.

The petitioner had acquired the stock of the Iron Works prior to March 1, 1913, and the stock then had a value in excess of its cost, and on December 31, 1917, the fair market value of the stock surrendered was equal to the fair market value of all the assets of the Iron Works.

The petitioner and the Iron Works on or about March 28, 1918, filed separate income and excess profits tax returns for the year 1917. It is agreed that the petitioner and the Iron Works were affiliated for excess profits tax purposes during the year 1917 within the purview of section 1331 of the Revenue Act of 1921 (26 USCA § 1067), and the Commissioner of Internal Revenue on or about May 24, 1918, required both

companies to file a consolidated return of the net income of that year, but only for excess profits tax purposes. He refused to allow the companies to file consolidated returns for income tax purposes, and computed and assessed the income tax of each of said companies upon the basis of their separate returns. The Commissioner assessed against the petitioner, and the petitioner paid, an income tax (but no excess profits tax), by reason of the determination of the Commissioner that the petitioner had received taxable income upon receipt of the dividend in liquidation of the Iron Works in the transaction above described. Suits are pending to recover this tax. The issues raised in those suits are not now before the court.

The Commissioner of Internal Revenue has refused to recognize the petitioner's claim that the allowance for depreciation with respect to these depreciable assets should be based upon the fair market value of the assets on December 31, 1917, or, which is the same thing, the fair market value on that date of the stock surrendered therefor, and has proceeded to compute the allowance upon the cost of these assets to the Iron Works or the fair market value thereof on March 1, 1913.

If the contention of the petitioner is to prevail, it is agreed that it is entitled to an additional deduction from net income for the year 1919 to the amount of $176,770.78. The parties have stipulated that the term "depreciation" as used in their stipulation means the deduction provided in section 234 (a) (7) of the Revenue Act of 1918 (40 Stat. 1077). This section provides in part as follows:

"Sec. 234 (a) That in computing the net income * * * there shall be allowed as deductions: * * * (7) A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence."

The question raised on the foregoing statement of facts is this: When a parent corporation acquires all of the assets of its subsidiary by a transfer in liquidation, may depreciation be computed upon the basis of cost of the assets to the parent company?

The petitioner claims that the depreciable assets were first acquired by it on December 31, 1917, and that the cost thereof was the fair market value of the shares of stock exchanged therefor. The government contends on the other hand that the assets were acquired from an affiliated corporation in an intercompany transaction in which gain or loss may not be recognized, and that consequently the cost to the subsidiary is the only proper basis upon which to compute depreciation, no new or "stepped up" basis being permissible.

Mr. Justice Brandeis, in United States v. Ludey, 274 U. S. 295, 47 S. Ct. 608, 610, 71 L. Ed. 1054, has defined the meaning of "depreciation" as used in the statute. He says:

"The depreciation charge permitted as a deduction from the gross income in determining the taxable income of a business for any year represents the reduction, during the year, of the capital assets through wear and tear of the plant used. The amount of the allowance for depreciation is the sum which should be set aside for the taxable year, in order that, at the end of the useful life of the plant in the business, the aggregate of the sums set aside will (with the salvage value) suffice to provide an amount equal to the original cost. The theory underlying this allowance for depreciation is that by using up the plant a gradual sale is made of it. The depreciation charged is the measure of the cost of the part which has been sold. When the plant is disposed of after years of use, the thing then sold is not the whole thing originally acquired. The amount of the depreciation must be deducted from the original cost of the whole in order to determine the cost of that disposed of in the final sale of properties. Any other construction would permit a double deduction for the loss of the same capital assets."

This definition is broad enough to admit of the proposition that the only true basis is the original cost to the first owner who employed the assets in an income-producing business, but neither the courts nor administrative officers have limited the allowance for wear, tear, and exhaustion to that basis. It is conceded by the government that, if the Iron Works had been a nonaffiliated corporation, the correct basis would have been the fair market value of the assets or the securities exchanged therefor at the time of the acquisition. Authority for this view is found in several decisions of the Board of Tax Appeals. L. H. Philo Corporation v. Commissioner, 16 B. T. A. 130; Hewett Grain & Provision Co. v. Commissioner, 14 B. T. A. 281; Monarch Electric & Wire Co. v. Commissioner, 12 B. T. A. 158; George A. Giles Co., 4 B. T. A. 335.

 It cannot be denied that in 1917 the petitioner and the Iron Works were two separate and distinct corporate entities, notwith-

standing the fact that the petitioner owned all the stock of the Iron Works. Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570; Cullinan v. Walker, 262 U. S. 134, 43 S. Ct. 495, 67 L. Ed. 906. And up to December 31, 1917, they were entitled to be treated as such for the purposes of taxation, except that the Commissioner had assumed the right to require consolidated returns for the purposes only of the excess profits tax. The Commissioner refused to allow the petitioner to file consolidated returns for income tax purposes. It is important to note that this liquidation took place before Congress had enacted any statute requiring affiliated corporations to file consolidated returns. Nevertheless, the two corporations were, in fact, affiliated in 1917 within the generally accepted meaning of the word and as the term has come to be recognized in connection with subsequent revenue statutes, but this affiliation was broken when the transfer in liquidation was consummated. Remington Rand v. Commissioner (C. C. A.) 33 F.(2d) 77; Sweets Co. of America v. Commissioner (C. C. A.) 40 F.(2d) 436.

The Board of Tax Appeals in Canal-Commercial National Bank v. Commissioner, 22 B. T. A. 541, applying the rule in the Remington Rand Case, held that 'a transfer in liquidation by a subsidiary to the parent corporation was a transaction "occurring outside of the group, and the gain realized is solely that of the parent company. * * * "

In collecting an income tax upon the gain resulting from the distribution in liquidation to the petitioner, the government has acted upon that principle. I fail to see how the government can now consistently urge upon the court the propriety of treating the transaction as an intercompany transaction in which no gain or loss results. The taxes here involved were assessed for the year 1919, when there was no group of affiliated corporations, no subsidiary and parent companies. The government was dealing with a single corporate taxpayer which was the sole and direct owner of the depreciable assets. These assets were acquired on December 31, 1917. The cost of these assets to the petitioner at the time of acquisition would ordinarily be taken as the basis of the depreciation allowance. Nevertheless, the government contends that the general rule does not here apply, since the transferor and the transferee had been, and at the time of the liquidation were, affiliated. My attention

has not been called to any case which is precisely in point. The arguments advanced by the attorneys for the defendant are: (1) That the petitioner under the circumstances cannot avail itself of a "stepped up" valuation; (2) that there was no additional outlay of capital; and (3) that as a result of the liquidation the parent corporation merely stepped into the place of the subsidiary.

It will be noted in nearly all of the decisions of the Board of Tax Appeals, above cited, which deal with the question of depreciation, that the taxpayer had succeeded to the business of a partnership or a predecessor corporation, the assets employed in the business being transferred in exchange for capital stock issued by the taxpayer in payment therefor. In all of these cases it was held that, for the purposes of depreciation, the market value at the time of transfer was the proper basis. These decisions seem to be in harmony with rulings of the Bureau of Internal Revenue relating to depreciation allowed reorganized companies. It would appear that both Bureau and Board of Tax Appeals have recognized the principle that the right to a new basis for depreciation necessarily follows from the acquisition of property by a distinct corporate entity, in the absence of express statutory enactment prohibiting such basis.

I can discern no distinction in principle between the cases cited and the case at bar. There is to be found in them the same "stepping up" of valuation and the same succession to the business and assets of a predecessor which the government now finds objectionable, and I gather that in some of the cases the arguments advanced here were pressed without success.

I am satisfied that, according to the rule established by the Board of Tax Appeals, and apparently followed by the Bureau in allowing depreciation on assets acquired in exchange for stock, the basis is the market value at the time of acquisition, and I am unable to see how, under the law as it stood in 1919, it would be reasonable to depart from the settled practice merely because the depreciable assets had been acquired from a subsidiary corporation. I rule, therefore, that petitioner is entitled to a further deduction of $176,770.78. In accordance with the terms of the stipulation of parties, judgment may be entered for petitioner for such amount as parties may agree upon, or, in case of disagreement, I will grant further hearings for the determination of the amount.