ALUMINUM GOODS MFG. CO. v. COMMISSIONER OF INTERNAL REVENUE.

No. 4642.

Circuit Court of Appeals, Seventh Circuit.

Feb. 25, 1932.

Rehearing Denied April 4, 1932.

Edwin S. Mack, of Milwaukee, Wis., for petitioner.

G. A. Youngquist, Asst. Atty. Gen., and J. Louis Monarch, John MacC. Hudson, and Wm. Cutler Thompson, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and F. R. Shearer, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before EVANS and SPARKS, Circuit Judges, and BALTZELL, District Judge.

EVANS, Circuit Judge.

Petitioner's income and profits taxes for the years 1917, 1919, and 1921 are involved on this appeal. The dispute over the 1917 tax arises out of a loss suffered by petitioner through the liquidation of its subsidiary which had become insolvent. Petitioner asserts that it has overpaid its 1917 tax and seeks a refund. Respondent contends, and the Board of Tax Appeals sustained his view, that an additional tax was due for this year. Dispute over the 1919 and 1921 taxes arises over the item of invested capital. It is conceded by respondent that, if petitioner's contention respecting the 1917 tax be accepted, the 1919 and 1921 taxes must likewise be corrected, because a changed invested capital would necessitate a different basis of computation.

The facts: Petitioner, an aluminum manufacturing company, in 1914 purchased the entire capital stock of the Aluminum Sales Company for $29,749.80. The sales company operated at a loss during 1914, 1915, 1916, and 1917. Its operating loss for the last year was $14,689.65. The loss which petitioner seeks to deduct arises from loans or advances, aggregating $47,486.31, and its investment in the subsidiary's stock—$29,-749.80, less $10,684.56, which it received in equipment and good will upon the subsidiary's liquidation. Deducting $14,689.65, operating loss of the sales company in 1917, which respondent allowed, there is left a net loss of $51,861.90 sought to be deducted.

Up to and including 1916, the petitioner and the subsidiary filed separate returns. In 1917, they filed separate returns for normal tax purposes and a consolidated return for excess profits tax purposes. In the computation of the petitioner's income for normal taxes upon the separate return for 1917, the Commissioner allowed a deduction of the entire loss incurred upon the liquidation of the subsidiary, but for excess profits tax purposes he only allowed a deduction of $14,-689.65, the operating loss of the subsidiary for 1917.

The Board of Tax Appeals found that: "The business of the Sales Company during the year 1917 consisted chiefly in finally closing up its affairs preparatory to formal dissolution. The Sales Company did not transact any business after the close of the year 1917, and all of its assets and liabilities were disposed of by the end of that year. In February, 1918, formal dissolution of the Sales Company was effected by the surrender of its charter."

The Board held that the loss of $51,861.-90, which arose from the liquidation of the subsidiary, was not deductible in determining the excess profits tax.

It is conceded that the entire loss was deductible, if at all, in the year 1917. Respondent, however, contends that the loss sought to be deducted is a loss resulting from intercompany transactions and therefore not allowable upon a consolidated return. The basis of his argument is that the transfer to the parent company of all the assets of the subsidiary is insufficient to terminate affiliation and that the loss sustained was from an intercompany transaction. Petitioner argues that a loss suffered upon liquidation of a

subsidiary is outside the period of the affiliation, and also that the loss did not arise from an intercompany transaction.

The Revenue Act of 1917 (40 Stat. 300) provided for an excess profits tax, in addition to the taxes already existing, upon the income of every corporation, and gave to the Commissioner power to promulgate necessary rules and regulations. Sections 4, 201, 206, and 213. The Revenue Act of 1921 (42 Stat. 227, § 1331 [26 USCA § 1067]) provided that the act of 1917 should be construed to impose the taxes therein mentioned upon the basis of consolidated returns of net income and invested capital in the case of corporations affiliated during 1917, and defined the term "affiliation" so as to include wholly owned subsidiaries.

The purpose and advantages of consolidated returns are obvious. The determination of the tax assessed thereon proceeds on the theory that in ascertaining taxable income the government looks beyond the outward form to the business activities of the entities and levies a tax on the business unit although said business is conducted by two corporations. But provisions for the making of a consolidated return by the affiliated companies do not affect the section of the statute which defines gains and losses. These definitions are to be found in other sections of the Internal Revenue Act. Section 12 (a), title 1, of the Revenue Act 1916, 39 Stat. 767 (a provision found in every income tax act), provides for the deduction from gross income of "all losses actually sustained and charged off within the year."

In the instant case, it is impossible to escape the conclusion that petitioner suffered a loss. That the loss was sustained in 1917, if at all, is admitted. The conclusion seems too obvious to require argument—that a company which buys stock in 1914, paying $29,749.80 in cash therefor, loses that amount upon the company's selling all of its assets, including good will, realizing a sum less than its debts. Likewise, if A loans money at different times to B, and B sells all of its assets and realizes only a fraction of its indebtedness, then A loses the difference between the sum total of its loans and the amount it received upon the liquidation of B's assets.

Refusal to recognize these losses, respondent argues, is due to the fact that said losses are traceable to intercompany transactions of the affiliated companies. No statutory authority is cited to support this position, but practice in the Internal Revenue Department has resulted in the disallowance of such losses which grow out of strictly intercompany transactions. Such practice found expression in Regulations 62, art. 636, and Regulations 65, art. 636. The practice can be sustained only in so far as it does not run counter to the provisions of the statute. No rule or practice of the Department can be sustained which defines a profit or a loss differently from that of the statute. The practice of accountants of ignoring a loss of one affiliated company when it is compensated by again of the other affiliated company, and when so limited, is eminently sound. As A and B (two affiliated companies) for tax purposes are one, a loss to one which is represented by a gain to the other should be ignored. Such transactions are called intercompany transactions. But a loss to A not compensated by a gain to B is a loss which A should be permitted to deduct even though A and B file a consolidated return. Strictly speaking, such a transaction is not an intercompany transaction.

Petitioner's purchase of the stock of the sales company was not an intercompany transaction. At the time of the purchase, the two companies were not affiliated. Neither was the purchase of the stock from a third party a transaction with the subsidiary company.

Likewise, the losses of the sales company grew out of its conduct of its business; that is, its cost of operation and the losses on its account due to sales to third parties. The loans were never repaid because of such losses by the sales company to third parties. In the only instance when the sales company claimed an operating loss, the amount of said loss was deducted.

Authorities, save Utica Knitting Co. v. U. S., 68 Ct. Cl. 77, sustain this understanding of an intercompany loss. The same authorities [Remington Rand, Inc., v. Commissioner (C. C. A.) 33 F.(2d) 77; United Publishers' Corp. v. Anderson (D. C.) 42 F.(2d) 781, 787; Riggs National Bank v. Commissioner, 17 B. T. A. 615; Wilmington Steamboat Co. v. Sturgess, 52 F.(2d) 210 (D. C. N. J.), affirmed on appeal 55 F.(2d) 831; Canal-Commercial National Bank v. Commissioner, 22 B. T. A. 541; American Printing Co. v. United States, 53 F.(2d) 98 (D. C. Mass.); American Paper Exports, Inc., v. Bowers, 54 F.(2d) 508 (C. C. A. 2), sustain a holding that liquidation of the sales company ipso facto terminates the affiliation of the two companies. The basis for these decisions seems sound. The statute governing affiliated returns contemplated its ap-

plication to active companies only. It would be a legal and commercial impossibility for a going corporation to affiliate with a corpse—the mere shell of a former corporation. The activities of a dissolved corporation are nil. Its assets amount to a cipher. To add nullities and a cipher to a live company's capital and to its operation would produce no change in the return.

In the instant case, evidence was produced to show, and the Board found, that the sales company was legally dissolved immediately following its liquidation. In other words, its burial followed shortly after its demise. To ascertain when the status of affiliation terminates, attention is centered in the subsidiary's death, not on its burial.

Had petitioner upon the liquidation of the subsidiary realized a sum in excess of the amount it paid for the stock, it would be, as was held in American Printing Co. v. U. S., supra, chargeable with the excess for the year in which it was received. It follows that, if a taxpayer be chargeable with the profits growing out of such a transaction, it should likewise be credited with a loss if the sum realized upon liquidation be less than the amount it paid for the stock.

Our conclusions are: That affiliation between petitioner and the sales company was terminated by the latter company's liquidation; that the loss which petitioner sustained in its purchase of the stock of the sales company was clearly not an intercompany transaction; that the loss petitioner sustained through its loans and advances to the sales company was not sustained in an intercompany transaction; that both losses occurred outside the period of the affiliation of the two companies.

The order of the Board of Tax Appeals is reversed, with directions to said Board to redetermine petitioner's 1917, 1919, and 1921 taxes in accordance with the views herein expressed.