HERNANDEZ, Collector of Internal Revenue,
v. CHARLES ILFELD CO. *

No. 787.

Circuit Court of Appeals, Tenth Circuit.

July 13, 1933.

*For opinion denying rehearing, see 67 F.(2d) 236.

D. A. Taylor, of Washington, D. C. (Hugh B. Woodward, U. S. Atty., and Dudley Cornell, Asst. U. S. Atty., both of Albuquerque, N. M., and Eugene Harpole, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C., on the brief), for appellant.

A. T. Hannett, of Albuquerque, N. M., for appellee.

Before LEWIS and McDERMOTT, Circuit Judges, and POLLOCK, District Judge.

McDERMOTT, Circuit Judge.

The plaintiff below, appellee here, recovered a judgment for $14,460.43 on account of an overpayment of income taxes for the year 1929, a claim for refund thereof having been denied. The question in dispute is whether the taxpayer was entitled to deduct from its income certain losses arising from the liquidation of two of its subsidiaries. The case was tried without a jury, and the facts specially found by the trial court.

The record discloses that in 1917 the plaintiff purchased all of the capital stock of the Springer Trading Company and paid therefor the sum of $40,000.00. The Springer Company was operated as an affiliated and a going concern until November, 1929. During that period the plaintiff advanced to it the sum of $69,030.27. In November, 1929, the Springer Company sold all of its assets to outside interests, paid all of its obligations, and ceased to function as a going concern. On December 23, 1929, the Springer Company turned over to the plaintiff $22,914.22, the net cash proceeds of its liquidation. In the taxable years 1918 to 1929, inclusive, the plaintiff filed consolidated corporation income tax returns in which it claimed and received allowances as deductions from its own net in-

come the aggregate sum of $131,424.41 on account of losses sustained by the Springer Company during ten of those years; in the other two years the plaintiff returned as a part of its consolidated income profits realized by the Springer Company amounting to $12,913.88. The account of the plaintiff with the Springer Company stands as follows:

| | |
|---|---|
| Purchase price in 1917....... | $40,000.00 |
| Advances from 1917 to 1929... | 69,030.27 |
| | $109,030.27 |
| Amount realized on liquidation.. | 22,914.22 |

| | |
|---|---|
| Loss claimed to be sustained in 1929 ..................... | $86,116.05 |
| Losses of Springer Company heretofore claimed and allowed .................... | $131,424.41 |
| Profits of Springer Company heretofore returned ....... | 12,913.88 |

| | |
|---|---|
| Allowed aggregate net deductions from plaintiff's taxable income on account of losses sustained by the Springer Company ................ | $118,510.53 |

The Roy Trading Company was acquired in 1920 and the facts concerning its operation and liquidation are the same as those of the Springer Company. The figures as to the Roy Company are as follows:

| | |
|---|---|
| Purchase price in 1920......... | $50,000.00 |
| Advances from 1920 to 1929..... | 9,782.22 |
| | $59,782.22 |
| Amount realized on liquidation... | 15,106.16 |

| | |
|---|---|
| Loss claimed to be sustained in 1929 ..................... | $44,676.06 |
| Losses of Roy Company heretofore claimed and allowed.......... | $61,535.17 |
| Profits of Roy Company during four of the years during affiliation ...................... | 4,407.32 |

| | |
|---|---|
| Allowed aggregate net deductions from plaintiff's taxable income on account of losses sustained by the Roy Trading Company..... | $57,127.85 |

Although the trial court declined to so find, the record discloses that on December 30, 1929, there was a special meeting of the stockholders of the two subsidiaries, at which resolutions were passed to dissolve the corporations. In accordance therewith the charters of the corporations were surrendered on December 30, 1929.

Two legal questions are presented. First, were the losses sustained by reason of the liquidation of the subsidiaries, intercompany transactions during the period of affiliation of which no account should be taken? Or was the affiliation broken by the sale of all of the assets of the subsidiaries to outsiders, and the payment of the proceeds to the parent? The Collector insists that since the test of affiliation is ownership of stock, that the affiliation continues as long as the stock is owned; that the affiliation therefore continued until December 30, 1929; that the losses occurred either in November when the assets of the subsidiary were sold, or on December 23 when the proceeds were paid over to the parent, and that either date is within the period of affiliation; that it was therefore an intercompany transaction, and cannot be reckoned in arriving at the net corporate income of the consolidated corporations.

We are of the opinion that this is entirely too narrow a view to take of the transactions. It is an attempt to divide the indivisible. The sale of all of their assets by the two subsidiaries, promptly followed by their turning over of the net proceeds of the sales to the plaintiff, and the prompt surrender of their charters, are but steps in a single transaction which terminated the affiliation. A consolidated return by affiliated corporations is a statutory device to arrive at the true income of an economic unit,—an effort to prevent distortion of true income by the elimination of transactions between members of the group which do not affect the income of the group as a whole. But when the subsidiaries sold their assets, they sold them to parties outside of the group; an actual loss to the economic unit resulted. To hold that this actual loss, sustained by the plaintiff, may not be allowed because the formality of surrendering the corporate charters did not take place until a few days thereafter, is to stick in the bark. It has been so many times held that the form must give way to the substance that it has become an axiom. If the form of the transaction should prevail over the substance, on the point here presented, a clear way would be pointed out by which consolidated corporations might avoid the payment of their just taxes. A consolidated group might sell one of its subsidiaries to a stranger for an actual profit of a million dollars in cash, and avoid all taxes thereon by the very simple device of failing to surrender the corporate charter until the next succeeding taxable year. An interpretation which would permit of such a ready avoidance of taxation of a profit

actually realized should not be adopted unless the words of the statute are mandatory.

██ Neither the statutes nor the regulations require any such holding. The whole scheme of consolidated returns deals only with corporations affiliated in fact; in the ordinary case, it would seem that affiliation commences with the acquisition of a corporation from owners outside the group; it ends with a disposal of all its properties or its stock to those outside the group. Section 141 of the Revenue Act of 1928 (26 USCA § 2141) contemplates the termination of an affiliation during the taxable year. Subsection (a), § 141 (26 USCA § 2141 (a), provides: "In the case of a corporation which is a member of the affiliated group for a fractional part of the year the consolidated return shall include the income of such corporation for such part of the year as it is a member of the affiliated group."

Notwithstanding that this statute is clear and unambiguous, the appellant maintains that under subdivision (a), Art. 37, Reg. 75, a consolidated return may not reflect the results of the transaction by which the affiliation was broken, nor the gain or loss resulting from a sale by the group to an outsider. That subdivision reads: "Gain or loss shall not be recognized upon a distribution during a consolidated return period, by a member of an affiliated group to another member of such group, in cancellation or redemption of all or any portion of its stock; and any such distribution shall be considered an intercompany transaction."

This regulation was promulgated in aid of the statutory scheme of consolidated returns of affiliated corporations. If its application is limited to transactions which occurred during the period of affiliation, there is no occasion here to challenge its validity. If one affiliate disposes of a part or all of its assets or its stock to another member of the group, it is probable that this regulation would be applicable. If the regulation attempts to eliminate either gains or losses to the group arising by a sale of its assets to those outside the group, it is in conflict with the statutes and other regulations dealing with consolidated returns, and with the many decisions which have construed those statutes to mean that a consolidated return must reflect the true profits and losses of the affiliates as a unit. Golden Cycle Corporation v. Commissioner (C. C. A. 10) 51 F.(2d) 927, and cases therein cited.

██ Even upon the theory of the Collector that the subsidiaries continued to exist until

December 30, 1929, the affiliation was technically terminated within the taxable year. However, we hold that, on this record, the affiliation was in fact terminated when the subsidiaries sold all of their assets to outsiders and ceased to operate as going concerns.

But the meat of the question is not when the affiliation was broken; the solution of that question is but an aid in arriving at the core of the case, and that is, whether a taxable gain or loss results when a subsidiary sells all its assets to outside interests and goes out of business. Such a transaction does result in gain or loss to the group, and to leave it out of the return will inevitably distort the true income of the group and result in precisely what the statutes undertake to prevent. In Aluminum Goods Mfg. Co. v. Commissioner (C. C. A. 7) 56 F.(2d) 568, the subsidiary sold all of its equipment and good will in 1917, and ceased to transact any business during that period. There was no formal dissolution of the subsidiary until February, 1918, when the charter was surrendered. It was held that the affiliation terminated when the subsidiary disposed of all of its assets in 1917 to those outside the group, and not in 1918, when the charter was surrendered. The loss arising from the sale was allowed as a loss of the parent company in 1917. This decision was affirmed by the Supreme Court of the United States in Burnet v. Aluminum Goods Mfg. Company, 287 U. S. 544, 53 S. Ct. 227, 229, 77 L. Ed. 484, upon the ground that whether or not the affiliation was terminated by the sale, the gain or loss resulting from the liquidation must be taken into account in arriving at the income of the parent. The case dealt with the excess profits statute, and with other regulations, but the language of the Supreme Court is unmistakable. Among other things, the court said:

"The purpose of requiring consolidated returns by affiliated corporations was, as the government contends, to impose the war profits tax, according to true net income and invested capital of what was, in practical effect, a single business enterprise, even though conducted by means of more than one corporation. Primarily, the consolidated return was to preclude reduction of the total tax payable by the business, viewed as a unit, by redistribution of income or capital among the component corporations by means of intercompany transactions. * * * .

"These provisions plainly do not lay down any rigid rule of accounting to be applied to consolidated returns which would exclude from the computation of taxable income the results of every intercompany transaction, regardless of its effect upon the capital or the net gains or losses of the business of the affiliated corporations. Instead, they merely disclose the purpose underlying regulations and statute to prevent, through the exercise of a common power of control, any intercompany manipulation which would distort invested capital or the true income of the unitary business carried on by the affiliated corporations. Hence, no method of accounting, in calculating taxable income upon the consolidated return, can be upheld, which would withhold from the taxpayer all benefit of deduction for losses actually sustained and deductible under the sections governing the computation of taxable income, and which at the same time would not further, in some way, the very purpose for which consolidated returns are required. * * *

"The loss was a real one, suffered by respondent as a separate corporate entity, and it was equally a loss suffered by the single business carried on by the two corporations during the period of their affiliation, ultimately reflected in the 1917 loss of capital invested in that business."

We conclude, therefore, that a capital loss resulting from the liquidation of a subsidiary is an item properly entering into the return of the parent.

The second question presented by the record is more difficult. The trial court found that from year to year, the plaintiff, in its consolidated returns, had taken credit for losses of the two subsidiaries against its own income, in an aggregate amount in excess of the losses realized on liquidation. The net loss sustained by the plaintiff on account of the operations of the Springer Company, for which credit is claimed in 1929, is $86,116.05; but during the preceding years plaintiff had claimed and been allowed against its own taxable net income, net losses of $118,510.53. The figures of the Roy Company are $44,676.06 and $57,127.85, respectively. It thus appears that if the plaintiff prevails in this action, it is allowed total credits against its taxable income on account of the Springer Company of $204,626.58, whereas its total investment therein is only $109,030.27. The figures of the Roy Company are losses claimed $101,803.91, as against a total investment of $59,782.22.

The Collector claims that losses on account of the operations of subsidiaries cannot be taken but once. The plaintiff, without endeavoring to sustain the propriety of a double deduction for losses once sustained, relies upon

Remington Rand, Inc., v. Commissioner (C. C. A. 2) 33 F.(2d) 77, certiorari denied, 280 U. S. 591, 50 S. Ct. 39, 74 L. Ed. 639. In that case it appears that the corporation acquired the stock of the subsidiary for $45,000, and later sold it for $60,000. The court held that the capital gain resulting from this transaction was taxable income. The court declined to offset, as against this realized gain, earnings of the subsidiary which might have been declared as dividends and reinvested in the subsidiary, but which were not, although such earnings were accounted for as a part of the income of the affiliated group. This decision rests upon the accepted doctrine that capital gains are taxable when they are realized; what the court did was to decline to adopt the taxpayer's theory that the accumulation of earnings by a corporation is a constructive receipt of dividends and reinvestment thereof in the corporation. It also accords with the accepted rule that when a stockholder disposes of his stock, he is required to account for the capital gain, and is not allowed a deduction therefrom on account of taxes which have been paid by the corporation upon undistributed earnings. That decision, however, was accepted as controlling by the District Court of New York in United Publishers' Corporation v. Anderson, 42 F.(2d) 781, in a case that is not distinguishable from the case at bar. Canal-Commercial Nat. Bank v. Commissioner, 22 B. T. A. 541, is cited by appellee. If that case has any bearing on this one, which we doubt, it supports the contention of the Collector. There a dividend paid by the subsidiary was treated as a part of the proceeds of the liquidation.

The plaintiff argues that since in arriving at capital gain, operating profits which have been returned for taxes are not taken into the equation, operating losses which have been allowed as deductions should not be considered. There is some logic and convenience in a clear separation of capital losses from operating losses; there is a rough equity in the plaintiff's position that what is sauce for the goose should be treated as sauce for the gander.

On the other hand, there is a natural repugnance to permitting the same loss to be twice deducted from taxable income. The losses heretofore allowed plaintiff, plus the loss now claimed, are nearly twice its entire investment in the subsidiaries—a manifest impossibility. Moreover, plaintiff reasons only by analogy, for the same income may be and often is taxed twice, as every stockholder of a corporation knows. It may not be fair,

but it is not impossible. To say that plaintiff sustained a loss of $306,430.49 on a total investment of $168,812.49 is to say what cannot be. Nor is it clear that the losses taken in preceding years were operating losses, although they probably were.

■ A corporation which each year deducts the operating losses of its subsidiary from its own income, ought not to be allowed to accumulate those losses and take them again when the subsidiary is finally liquidated. In the instant case, advances made to the subsidiary corporations from year to year were dissipated in the business, and the losses were used to offset the other income of the plaintiff. These advances are now used to augment the cost of the subsidiary, and the losses again utilized to offset other corporate income.

This argument on principle is fortified by the decision of the Supreme Court of the United States in Burnet v. Aluminum Goods Mfg. Company, 287 U. S. 544, 53 S. Ct. 227, 230, 77 L. Ed. 484. It there appeared that the subsidiary sustained operating losses in 1914, 1915, 1916, and 1917. During the first three years, there was no provision for consolidated returns, and the parent was neither charged with undistributed earnings of the subsidiary, nor credited with its losses. For those years, therefore, it was entirely fair that operating losses or gains should be ignored when the parent disposed of the subsidiary, for its own income tax had not been affected by its subsidiary's losses or its undistributed gains. But in 1917 the law permitted a consolidated return which carried into the parent's return the operating gain or loss of its child. So when the subsidiary was liquidated, the operating loss of 1917 was deducted from the capital loss on liquidation. In that connection the Supreme Court said: "So far as the loss from operation of the sales company in earlier years contributed to respondent's capital loss in 1917, deduction of the latter in the consolidated return involved no double deduction of losses of the business of the two companies during the period of their affiliation. As respondent's total loss in 1917 was reduced, before deduction in the consolidated return, by the amount of the operating loss of the sales company for that year, there was no duplication of any losses accrued or sustained in that year. * * * While equitable principles of accounting applied to the calculation of the net income of the business unit do not permit deduction of the loss twice, they do require its deduction once."

A case squarely in point is Burnet v. Riggs National Bank (C. C. A. 4) 57 F.(2d)

980, 983, strongly relied upon by appellee in support of its contentions on the first question presented. In that case it appears that the taxpayer suffered a capital loss in the liquidation of a subsidiary of $94,949.07. Prior to the liquidation, $41,485.22 had been claimed and allowed as an operating loss of the subsidiary against the operating income of the parent corporation. In deciding the contention that the taxpayer was entitled to the entire loss, the court said: "On the other hand, we are convinced that the Board of Tax Appeals was right in refusing to allow the claim of the Riggs Bank for the entire loss as at the time of the liquidation, because of the fact that a part of this loss had been deducted by the bank in its return for the first part of the year 1922. To allow the entire loss as of June 10, 1922, would have resulted in respondent receiving credit twice for a part of the loss. David M. Goodrich v. William H. Edwards, 255 U. S. 527, 41 S. Ct. 390, 65 L. Ed. 758; United States v. Ludey, 274 U. S. 295, 47 S. Ct. 608, 71 L. Ed. 1054. Double credits equally with double taxation are to be avoided where possible in construing laws passed by Congress."

It is our conclusion, therefore, that there should be deducted from the loss on liquidation, net losses which the appellee has been theretofore allowed from its own taxable income on account of the operation of these subsidiaries. The losses already allowed being in excess of the total losses sustained by reason of the purchase, operation and liquidation of these subsidiaries, judgment should go for the defendant.

Reversed.