McLAUGHLIN, Collector of Internal Revenue, v. PACIFIC LUMBER CO.

No. 6816.

Circuit Court of Appeals, Ninth Circuit.

Sept. 6, 1933.

I. M. Peckham, U. S. Atty., and Esther B. Phillips, Asst. U. S. Atty., both of San Francisco, Cal. (C. M. Charest, Gen. Counsel, Wright Matthews, and Warren W. Cole, Attys., Bureau of Internal Revenue, all of Washington, D. C., of counsel), for appellant.

F. D. Madison, Alfred Sutro, Felix T. Smith, V. K. Butler, Jr., and Eugene D. Bennett, all of San Francisco, Cal. (Pillsbury, Madison & Sutro, of San Francisco, Cal., of counsel), for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and NORCROSS, District Judge.

896

SAWTELLE, Circuit Judge.

From a judgment rendered by the District Court in favor of the Pacific Lumber Company, plaintiff below, for recovery of income taxes paid to the collector of internal revenue, the latter appeals. The judgment was for $143,122.23, representing income taxes paid by the appellant for the year 1923. Interest on that sum at the rate of 6 per cent. to January 13, 1932, totaling $64,977.53, and interest on the two foregoing sums from January 13, 1932, until paid also at 6 per cent., were allowed by the lower court. The date of January 13, 1932, was the one on which the judgment of the District Court was rendered. The case was tried before the court, without a jury, on an agreed statement of facts, together with the income tax returns referred to in the stipulation.

The appellee is a Maine corporation, with its principal office in California. During the years 1920, 1921, 1922, and 1923, it was affiliated with two subsidiary corporations, the Pacific Lumber Company of Illinois and A. F. Thane & Co. of California. During those years the operations of the three affiliates showed the following: The Thane Company suffered a heavy loss each year; the Illinois Company showed a loss in 1920 and profits in 1921, 1922, and 1923; and the Maine Company, or parent concern, made substantial profits each year.

According to the agreed statement of facts, "separate tax returns were filed by each of these companies and a consolidated return was also filed, showing the operations" of the three corporations. "Taxes were paid upon the net income shown in the consolidated returns." In his brief, the appellant states, and, we believe, correctly, that, though each company filed a separate return, no tax was computed thereon.

By the end of 1921, the appellee was the owner of the entire 5,000 shares of stock in the Thane Company, at a total cost of $479,-625.

During 1923 the Thane Company liquidated its business and assets, at a total loss of $106,915.01. The remaining assets were valued on its books at $20,560.72, and were taken over by the appellee at the same figure, as a final distribution in liquidation to it as sole stockholder at the time of dissolution. The assets transferred at the book value of $20,-560.72 to the parent company were applied by the latter to reduce the amount owing to it by its dissolved subsidiary to the final figure of $953,134.49.

The cost of the stock of the Thane Company to the appellee, or parent company, was, as we have seen, $479,625, and the indebtedness remaining due to the appellee, after final distribution to it, was $953,134.49. The appellee did not at the time of filing the separate or consolidated tax returns for 1923 claim either of the sums just mentioned, as deductions, but now asserts the right to deduct them in the consolidated tax return of the affiliated companies as losses that occurred in 1923.

It is with the 1923 tax liability that the present case is concerned. The separate and consolidated returns for that year showed the net income of the affiliated companies to be $1,158,362.46, which was reduced by the Bureau to $1,144,977.80. The tax on this latter amount was $143,122.23, and was regularly paid during 1924 in quarterly installments.

In March, 1928, the appellee filed a claim for refund of the entire tax thus paid, with interest, upon the theory that it had suffered losses during 1923 amounting to $1,432,759.-49, which it failed to deduct from the gross income reported on its separate return. If losses in this amount are deductible for 1923, the net income reported would be turned into a deficit, and the consolidated net income of $1,144,977.80 would be wiped out, no tax at all being payable.

The losses of $1,432,759.49 that the appellee claims that it should have deducted consist of the purchase price of the Thane stock, $479,625, and the balance owing to the appellee from the Thane Company at the end of 1923, or $953,134.49.

The appellant's principal contentions are:

1. That the losses of a parent corporation in connection with the liquidation and dissolution of a wholly owned subsidiary corporation are not allowable deductions for income tax purposes in a year for which a consolidated return has been filed, which includes the subsidiary's activities up to the date of the latter's dissolution.

2. If the losses of the parent in this case upon the liquidation and dissolution of its subsidiary in 1923 are to be construed for tax purposes as its own losses, and not the result of intercompany transactions, the facts show that these losses were fully and effectively recovered by the appellee for tax purposes by deductions taken in the consolidated returns for 1920 to 1923, inclusive, for the operating losses of the subsidiary.

As to the first contention, however, the appellant makes the following concession in his brief: "It would be idle for us to deny

that upon the broad question whether a parent company may deduct a loss of investment on the liquidation of a subsidiary, the present trend of decisions, both in the Board of Tax Appeals and in the courts, is in favor of the taxpayer."

Accordingly, we will devote our discussion principally to the appellant's second proposition.

After the appellant's brief was filed in this court, the case of Burnet v. Aluminum Goods Mfg. Co., 287 U. S. 544, 53 S. Ct. 227, 77 L. Ed. 484, was decided by the Supreme Court. As was indicated in the appellant's brief, the decision of the Supreme Court has clarified the whole subject.

In order to appreciate the parallelism between the facts in the Aluminum Case and those at bar, it will be helpful to quote the statement of the Supreme Court, at pages 545, 546 of 287 U. S., 53 S. Ct. 227, 228, 77 L. Ed. 484:

"In 1914 respondent, a New Jersey manufacturing corporation purchased all the capital stock of the Aluminum Sales & Manufacturing Company, a New York corporation. From that time until its liquidation, carried on in 1917, the sales company was principally engaged in selling goods manufactured by respondent. In February, 1918, it was dissolved. The operation of the sales company reflected net losses during the years 1914, 1915, and 1916, as well as in the year 1917. As a result of the operating losses and the liquidation of the sales company, respondent suffered the loss of certain sums advanced to the sales company, and of the total investment in its stock.

"For 1917 the two corporations filed separate returns for computation of the normal income tax, and a consolidated return for the purposes of the excess profits tax. In its separate return respondent claimed, and the Commissioner allowed, deduction of an aggregate loss made up of respondent's advances to the sales company, and the cost of its stock, less the value of equipment and good will realized on its liquidation. This loss, reduced by the 1917 operating loss of the sales company, was deducted from gross income in the consolidated return. The Commissioner's refusal to allow the deduction was sustained by the Board of Tax Appeals, 22 B. T. A. 1, whose determination was reversed by the Court of Appeals for the Seventh Circuit, 56 F.(2d) 568."

Upon the foregoing state of facts, the Supreme Court said:

"The purpose of requiring consolidated returns by affiliated corporations was, as the government contends, to impose the war profits tax, according to true net income and invested capital of what was, in practical effect, a single business enterprise, even though conducted by means of more than one corporation. Primarily, the consolidated return was to preclude reduction of the total tax payable by the business, viewed as a unit, by redistribution of income or capital among the component corporations by means of intercompany transactions. * * *

"In the present case, even though the affiliation continued, it does not follow as a matter of law that the loss was not rightly deducted in the consolidated return. [Statutes and a treasury regulation summarized.] It is conceded that the loss of respondent's advances to the sales company and the investment in its stock was sustained in 1917, was deductible therefore, if at all, in that year, and might properly have been deducted by respondent in a separate return, if a separate return had been permissible. But the government insists that the loss cannot be deducted in the mandatory consolidated return for 1917 because it occurred as the result of 'intercompany' transactions.

"We need not decide whether the loss resulted from intercompany transactions within the meaning of the regulations under later statutes which broadly exclude from the consolidated returns profit or loss upon all such transactions. For neither the Revenue Act of 1917, nor section 1331 of the Revenue Act of 1921 [26 USCA § 1067], nor the regulations under them, prescribe specifically the method of making up the consolidated return *or require the elimination from the computation of the tax of the results of all intercompany transactions.*" (Italics our own.) Pages 547–549 of 287 U. S., 53 S. Ct. 227, 229, 77 L. Ed. 484.

At this juncture it may be remarked that, though the Revenue Act of 1917 (40 Stat. 300) is not involved in the present case, sections of the Revenue Act of 1921 (42 Stat. 227) are quoted as pertinent in the appellant's brief.

It is likewise observable that, in a footnote to the text just quoted, the Supreme Court cites, at page 549, article 636 of Treasury Regulations, 65, under the Revenue Act of 1924. The pertinent language of that article is identical with that of article 636 of Treasury Regulations 62, under the Revenue Act of 1921, which is relied upon by the appellant herein. The language of ar-

ticle 636 in each set of Regulations is as follows: "Subject to the provisions covering the determination of taxable net income of separate corporations, *and subject further to the elimination of intercompany transactions* (whether or not resulting in any profit or loss to the separate corporations), the consolidated taxable net income shall be the combined net income of the several corporations consolidated. * * * "

It is clear that the Supreme Court did not regard these provisions as barring the taxpayer's right to deduct losses resulting from *every* intercompany transaction, for the court continued:

"These provisions plainly do not lay down any rigid rule of accounting to be applied to consolidated returns which would exclude from the computation of taxable income the results of every intercompany transaction, regardless of its effect upon the capital or the net gains or losses of the business of the affiliated corporations. Instead, they merely disclose the purpose underlying regulations and statute to prevent, through the exercise of a common power of control, any intercompany manipulation which would distort invested capital or the true income of the unitary business carried on by the affiliated corporations. Hence no method of accounting, in calculating taxable income upon the consolidated return, can be upheld, which would withhold from the taxpayer all benefit of deduction for losses actually sustained and deductible under the sections governing the computation of taxable income, and which at the same time would not further, in some way, the very purpose for which consolidated returns are required.

"Such, we think, is the effect of the method adopted by the Commissioner."

From the foregoing language of the Supreme Court, it is clear that the question of "intercompany transaction" vel non is not the decisive one in the instant case, despite the space devoted to it in the briefs. A different test is the one indicated by the Supreme Court, namely, the *effect* of the intercompany transaction "upon the capital or the net gains or losses of the business of the affiliated corporations," and whether or not any proposed calculation of taxable income upon the consolidated return "would withhold from the taxpayer all benefit of deduction for losses actually sustained and deductible under the sections governing the computation of taxable income," etc.

This same broad test is again laid down by the Supreme Court in the closing paragraph of the opinion in the Aluminum Case: "The loss was a real one, suffered by respondent as a separate corporate entity, and it was equally a loss suffered by the single business carried on by the two corporations during the period of their affiliation, ultimately reflected in the 1917 loss of capital invested in that business. While equitable principles of accounting applied to the calculation of the net income of the business unit do not permit deduction of the loss twice, they do require its deduction once. Hence the loss was deductible in 1917 under the statute and regulations controlling computation of taxable income, and its deduction is not forbidden by the regulations applicable to the consolidated return. Articles 77 and 78 of Treasury Regulations 41 would, indeed, require the elimination of any losses resulting from intercompany transactions, the inclusion of which would defeat the purpose of consolidated returns to tax the true income of the single business of affiliated corporations, calculated by correct accounting methods. The deductions claimed here had no such effect."

The foregoing interpretation of the Aluminum Case is supported by the language used by the Supreme Court in Atlantic City Elec. Co. v. Commissioner, 288 U. S. 152, 154, 53 S. Ct. 383, 384, 77 L. Ed. 667, decided on February 6, 1933: "The purpose of the Congress was to secure substantial equality among stockholders who ultimately bear the burden of taxation, and to prevent evasion through the manipulation of intercompany transactions. [Authorities, including the Aluminum Case, cited.] The requirement of consolidated returns was 'based upon the principle of levying the tax according to the true net income and invested capital of a single business enterprise, even though the business is operated through more than one corporation.' Treasury Regulations No. 45, article 631."

Applying the doctrine of the Aluminum Case to the facts at bar, after an examination of the record and of the exhibits, we do not find that there is evidence to sustain the appellant's allegation of double deduction. The appellant has failed to establish any specific instance of such deduction. Mere similarity of totals as between different years does not justify the inference that the deduction is a double one. In the words of the Supreme Court, "the deductions claimed here had no such effect."

On the other hand, we believe that the appellee has established its right to the deduc-

tions, and that it is entitled to the refund in question.

The matter of interest on the amount claimed as a refund is also in controversy here. As we have already seen, interest was allowed at 6 per cent. from the dates of payment to the date of the rendering of the judgment, thereafter on the whole amount at 6 per cent. until paid. In opposition to this rate of interest, the appellant cites section 319 of the Act of June 30, 1932 (28 USCA § 811a), in which the rate of interest in a case of this kind is fixed at 4 per cent.

As the appellee points out, however, on January 30, 1933, the day on which the instant case was argued before this court, the President of the United States signed the Deficiency Appropriation Bill (H. R. 14436, Public No. 325, 72d Congress), pages 7, 8, section 2 of which provides in part as follows: " * * * Section 319 of the Act of June 30, 1932 (Economy Act) (47 Stat. 412), shall not apply to any judgment rendered against the United States prior to July 1, 1932. Appropriations for the payment of any such judgment and interest thereon shall be available for the payment of principal and interest in accordance with the terms of such judgment and the appropriation therefor, notwithstanding the provisions of sections 319 and 803 of such Act." See, also, section 14 of title 2, Public No. 428, 72d Congress, page 31, approved March 3, 1933 (26 USCA § 2614 note).

Since the "judgment as to interest" in the present case was dated before July 1, 1932, that is, on January 18, 1932, the foregoing section is applicable, and the rate of 6 per cent. must be upheld.

Accordingly, the judgment is affirmed.